NO. 22-1243

**UNITED STATES COURT OF APPEALS FOR THE
FIRST CIRCUIT**

DEREK CAPOZZI,
*Appellant*,

v.

UNITED STATES,
*Appellee*.

On Appeal from the United States District Court
for the District of Massachusetts

**BRIEF OF APPELLANT**

Dana Goldblatt
First Circuit No. 1170639
B.B.O. No. 601022

The Law Office of Dana Goldblatt
150 Main Street, Ste. 28
Northampton, MA 01060
(413)570-4136
dana@danagoldblattlaw.com

October 17, 2022

# TABLE OF CONTENTS

TABLE OF CONTENTS....................... 2

TABLE OF AUTHORITIES.................... 4

JURISDICTIONAL STATEMENT................ 6

STATEMENT OF THE ISSUES................ 7

    I.   Whether a Defendant raises a cognizable claim under *Johnson* v. *United States*, 576 U.S. 591 (2015), when he was sentenced as an Armed Career Criminal (ACC) and it would have been unlawful for the original, sentencing court to do so by relying on the abrogated residual clause of 18 U.S.C. § 924(e)(2)(B)(ii)................... 7

    II.  Whether the District Court abuses its discretion when, having wrongfully denied a claim under *Johnson* v. *United States*, 576 U.S. 591 (2015), it declines to correct the error when amending the judgment for other reasons.............................. 7

STATEMENT OF THE CASE.................. 7

FACTS................................. 11

SUMMARY OF THE ARGUMENT............... 15

ARGUMENT.............................. 15

    I.   The standard of review is de novo..... 16

    II.  The Defendant's original sentence necessarily depended on the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii), and his sentence should have been vacated under *Johnson* as a matter of right................................ 17

A.  Legal Overview...................... 17

B.  The Defendant's record before the District Court in April 2000 did not reflect convictions for generic burglary as defined in *Taylor*................ 25

C.  There was no lawful basis on which the District Court could have concluded, in April 2000, that any of the Defendant's convictions satisfied the force clause. .................................. 26

D.  The District Court erred when it concluded that it could have lawfully sentenced the Defendant under the ACCA in April 2000 without relying on the residual clause..................... 29

E.  The District Court necessarily based its sentencing enhancements on the residual clause of the ACCA, and the Defendant was therefore entitled to relief under *Johnson*............................ 32

III. The District Court abused its discretion by declining to conduct a plenary re-sentencing. ................ 32

CONCLUSION ................................. 36

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Cody* v. *United States*,
  249 F.3d 47 (1st Cir. 2001) .............. 16
*Descamps* v. *United States*,
  570 U.S. 254 (2013) ...................... 22
*Dimott* v. *United States*,
  881 F.3d 232 (1st Cir. 2018) .......... 19, 20
*Johnson* v. *United States*,
  576 U.S. 591 (2015) ........... 9, 14, 16, 18
*Pasquarille* v. *United States*,
  130 F.3d 1220 (6th Cir. 1997) ............ 35
*Ruiz* v. *United States*,
  339 F.3d 39 (1st Cir. 2003) .............. 16
*Taylor* v. *United States*,
  495 U.S. 575 (1990) .............. 20, 21, 22
*The Confiscation Cases*,
  87 U.S. 92 (1873) ........................ 22
*United States* v. *Brown*,
  26 F.4th 48 (1st Cir. 2022) .............. 34
*United States* v. *Capozzi*,
  347 F.3d 327 (1st Cir. 2003) .............. 8
*United States* v. *Davis*,
  139 S.Ct. 2319 (2019) .................... 14
*United States* v. *Faust*,
  853 F.3d 39 (1st Cir. 2017) .............. 28
*United States* v. *Fish*,
  758 F.3d 1 (1st Cir. 2014) ............... 27
*United States* v. *Kennedy*,
  881 F.3d 14 (1st Cir. 2018) .............. 27
*United States* v. *Rodriguez*,
  112 F.3d 26 (1st Cir. 1997) .......... 33, 34
*United States* v. *Wilkinson*,
  926 F.2d 22 (1st Cir. 1991) .......... 24, 29
*United States* v. *Windley*,
  864 F.3d 36 (1st Cir. 2017) .......... 27, 28

*Welch* v. *United States*,
  578 U.S. 120 (2016) ....................... 18

State Cases

*Commonwealth v. Burno*,
  396 Mass. 622, 487 N.E.2d 1366 (1986) ..... 27
*Commonwealth v. Mistretta*,
  84 Mass. App. Ct. 906, 995 N.E.2d 814 (2013)
  ........................................ 27
*Commonwealth v. Porro*,
  458 Mass. 526, 939 N.E.2d 1157 (2010) ..... 27

Federal Statutes

18 U.S.C. § 922(g) ...................... 7, 11
18 U.S.C. § 924(c) ........... 8, 9, 11, 13, 14
18 U.S.C. § 924(e) 9, 11, 12, 14, 15, 17, 18, 21
18 U.S.C. § 1951(a) ..................... 8, 11
28 U.S.C. § 2255................. 8, 9, 13, 33

State Statutes

M.G.L. c. 265, § 13D....................... 12
M.G.L. c. 265, § 15....................... 12
M.G.L. c. 266, § 17....................... 12
M.G.L. c. 266, § 18.................... 12, 21

Federal Rules

U.S.S.G § 2k2.4........................... 33

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Massachusetts had jurisdiction over this action under 28 U.S.C. § 2255. The United States Court of Appeals for the First Circuit has jurisdiction over this action under 28 U.S.C. § 1291 because it is an appeal from a final judgment of the District Court. The District Court entered its decision on March 29, 2022. (Add. at 20.)[1] Defendant-Appellant filed a timely notice of appeal on March 30, 2022. (R. at 184.)

---

[1] Throughout this brief, the Addendum is cited as "(Add. at [page].)" The Record Appendix is cited as "(R. at [page].)" The Sealed Appendix is cited as "(S. at [page].")" References to the Pre-Sentence Report also include a notation to that effect, as well as a paragraph citation.

## STATEMENT OF THE ISSUES

I.  Whether a Defendant raises a cognizable claim under *Johnson* v. *United States*, 576 U.S. 591 (2015), when he was sentenced as an Armed Career Criminal (ACC) and it would have been unlawful for the original, sentencing court to do so by relying on the abrogated residual clause of 18 U.S.C. § 924(e)(2)(B)(ii).

II. Whether the District Court abuses its discretion when, having wrongfully denied a claim under *Johnson* v. *United States*, 576 U.S. 591 (2015), it declines to correct the error when amending the judgment for other reasons.

## STATEMENT OF THE CASE

On July 8, 1998, the Defendant was charged in a superseding indictment with being a felon in possession of a firearm, 18 U.S.C. § 922(g) (Count 1s); attempted extortion affecting interstate commerce, 18 U.S.C. § 1951(a) (Count 3s); and using a firearm in furtherance of a crime of violence (to wit, the attempted

7

extortion alleged in Count 3s), 18 U.S.C. §
924(c) (Count 4s). (R. at 3.)

He was convicted on all three counts after
a jury trial on November 16, 1999.

On April 13, 2000, judgment entered
against Mr. Capozzi. He was sentenced to serve
300 months on Counts 1s, 240 months on Count
3s, concurrent, and 60 months on Count 4s,
consecutive, for a total combined sentence of
360 months. (R. at 11.)

The judgment was affirmed on appeal.
*United States* v. *Capozzi*, 347 F.3d 327 (1st
Cir. 2003).

On January 25, 2005, Mr. Capozzi filed a
timely motion for post-conviction relief under
28 U.S.C. § 2255. (ECF No. 339.) The petition
was denied. (ECF No. 335.)

On November 27, 2015, Mr. Capozzi filed an
application in the Court of Appeals seeking
permission to file a second or successive
motion to vacate pursuant to 28 U.S.C. § 2255,
challenging his sentence under the Armed Career
Criminal Act (ACCA), 18 U.S.C. § 924(e), in

light of *Johnson* v. *United States*, 576 U.S. 591
(2015). First Circuit No. 15-2448. Counsel was
appointed, and Mr. Capozzi ultimately obtained
permission to specifically challenge every
purported ACCA predicate pursuant to Johnson.
*Id*.

On April 10, 2020, the Defendant filed a
timely Amended Motion to Vacate pursuant to
*Johnson*. (R. at 96.)

On June 16, 2020, the Government filed an
opposition thereto. (R. at 132.)

On March 31, 2021, the District Court
ruled on the Defendant's motion without a
hearing. His conviction on Count 4s pursuant to
18 U.S.C. § 924(c) was vacated. (Add. at 20.)
His challenge to his sentence on Counts 1s and
3s was denied. (Add. at 15-19, 20.)

On March 24, 2022, the District Court held
a hearing regarding Mr. Capozzi's sentencing.
At the hearing, the government stipulated that
"under current jurisprudence, the Defendant
would not be an ACC," but argued that the
District Court should nonetheless refrain from

plenary resentencing that would correct the error. (R. at 192.)

On March 29, 2022, the District Court issued an Amended Judgment. (Add. at 20-26.) The Amended Judgment vacated the conviction on Count 4s but left in place the original sentence on Counts 1s and 3s. (Add. at 20.) As a result, the Defendant's sentence was reduced by 60 months, for a total sentence of 300 months. (Add. at 21.) The District Court referred to this as "correcting" the sentence as opposed to "resentencing" the Defendant. (R. at 189.) The District Court indicated that it would look forward plenary resentencing if this court agreed with the Defendant that he had a cognizable *Johnson* claim requiring correction as a matter of constitutional jurisprudence. (R. at 214.)

On March 30, 2022, the Defendant timely filed a notice of appeal of the Amended Judgment. (R. at 184.)[2]

## FACTS

Mr. Capozzi was charged with, *inter alia*, being a felon in possession of a firearm, 18 U.S.C. § 922(g) (Count 1s); attempted extortion affecting interstate commerce, 18 U.S.C. § 1951(a) (Count 3s); and using a firearm in furtherance of a crime of violence (to wit, the attempted extortion alleged in Count 3s), 18 U.S.C. § 924(c) (Count 4s). (R. at 3-9.) Mr. Capozzi elected a jury trial and was convicted of the three charges. (R. at 10.) He was acquitted of all other charges. (*Id.*)

The United States Probation Department ("Probation") prepared a presentence report ("PSR"), deeming Mr. Capozzi an Armed Career

---

[2] There was some discussion during sentencing as to whether a certificate of appealability would be necessary in order for the Defendant to appeal the court's denial of his *Johnson* challenge. (R. at 216-218.) Ultimately, the court issued an Amended Judgment (Add. at 20), and the Defendant therefore proceeded by notice of appeal instead (R. at 184).

Criminal ("ACC") pursuant to 18 U.S.C. §
924(e). The Probation Department based its ACC
analysis on the following Massachusetts
convictions:

- A 1990 Breaking and Entering ("B&E")
  conviction, M.G.L. c. 266, § 18 (PSR ¶ 48,
  S. at 14-15);

- A 1991 B&E conviction, M.G.L. c. 266, § 18
  (PSR ¶ 49, S. at 15);

- A 1990 Entering Without Breaking
  conviction, M.G.L. c. 266, § 17 (PSR ¶ 50,
  S. at 15-16);

- A 1991 B&E conviction, M.G.L. c. 266, § 18
  (PSR ¶ 53, S. at 19-20);

- A 1991 B&E conviction, M.G.L. c. 266, § 18
  (PSR ¶ 54, S. at 20);

- Two 1991 B&E convictions M.G.L. c. 266, §
  18 (PSR ¶ 56, S. at 20-21); and

- A 1997 conviction of Assault and Battery
  with a Dangerous Weapon ("ABDW"), M.G.L.
  c. 265, § 15; and Assault and Battery on a
  Police Officer ("ABPO"), M.G.L. c. 265, §
  13D (PSR ¶ 57, S. at 20).

(PSR ¶¶ 32, 63; S. at 10, 22.) The PSR does not
report whether the first four B&E convictions
involved a "building, ship, vessel or vehicle."

(PSR ¶¶ 48, 49, 53, 54; S. at 14-20.) The PSR does specify that one of the 1991 B&Es involved a charge for breaking into a "residence." But the PSR does *not* specify whether the charging documents in that case limited the crime of conviction to a building. (PSR ¶ 56, S. at 20-21.)

On April 6, 2000, Mr. Capozzi was sentenced. There was no discussion of the legal basis for concluding that his prior convictions were ACCA predicates. (R. at 17-95.)

Based on Mr. Capozzi's assessed status as an ACC, the Guideline Sentencing Range was determined to be 235-293. (PSR ¶ 109, S. at 30.) The District Court imposed a sentence of 300 months, followed by the 60-month mandatory consecutive sentence required by the 18 U.S.C. § 924(c) conviction, for a total sentence of 360 months. (R. at 210.)

Mr. Capozzi timely filed and subsequently amended a 28 U.S.C. § 2255 motion challenging his conviction and sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e),

in light of *Johnson*, 576 U.S. 591. He made two distinct challenges in the first amended motion.

First, the Defendant argued that his conviction on Count 4s under 18 U.S.C. § 924(c) was invalid and subject to correction under *United States v. Davis*, 139 S.Ct. 2319 (2019). (R. at 106-111.) The challenge was successful and the conviction was vacated. (Add. at 20.)

Second, the Defendant challenged his sentence on Counts 1s and 3s. The sentences had been based on the District Court's determination that he was an ACC. The Defendant argued that the classification was based on the since-abrogated residual clause of 18 U.S.C. § 924(e) and was therefore subject to retroactive correction under *Johnson.* (R. at 100-108.) He requested re-sentencing on Counts 1s and 3s. The request was denied, pursuant to the reasoning in the District Court's memorandum and order dated March 30, 2021 (Add. at 14-19). The District Court amended the judgment to vacate the conviction on Count 4s while leaving

the challenged sentences for Counts 1s and 3s
in place. (Add. at 20.)

## SUMMARY OF THE ARGUMENT

The Defendant's sentence on Counts 1s and
3s should have been vacated because the
original sentencing court necessarily relied on
the residual clause of 18 U.S.C. § 924(e)(2)(B)
(1998) to conclude that Mr. Capozzi was an ACC.
There was no other lawful basis for such a
conclusion at that time.

The District Court then abused its
discretion when, having vacated Count 4s, it
had the opportunity to correct the *Johnson*
error by conducting a plenary resentencing but
declined to do so.

## ARGUMENT

The District Court wrongfully held that
the Defendant could have been originally
sentenced as an ACC without reliance on the
residual clause of the ACCA. The District Court
was wrong because such reliance would have been
unlawful. Accordingly, the District Court erred
when it declined to vacate the Defendant's

sentence on Counts 1s and 3s pursuant to his rights under *Johnson*, 576 U.S. 591.)

## I. The standard of review is de novo.

This court reviews "the District Court's legal conclusions *de novo* and its underlying findings of fact for clear error." *Ruiz* v. *United States*, 339 F.3d 39, 42 (1st Cir. 2003) (citing *Cody* v. *United States*, 249 F.3d 47, 52 (1st Cir. 2001)).

The Defendant makes a purely legal argument. The Defendant argues that it would have been unlawful for the original sentencing court, on the record before it, to have relied on the enumerated-felony clause or the force clause to sentence him as an ACC. He then argues that the district court abuses its discretion when it has the opportunity to conduct a plenary resentencing that would correct a legal error but fails to do so.

These are legal arguments. They involve only the scope of available retroactive relief under *Johnson* and the scope of a court's

discretion to let its errors stand. Review is therefore *de novo*.

**II. The Defendant's original sentence necessarily depended on the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii), and his sentence should have been vacated under *Johnson* as a matter of right.**

### A. Legal Overview

The Armed Career Criminal Act (ACCA) mandates sentencing enhancements for defendants who have previously been convicted of three crimes that qualify as "violent felonies" as defined in 18 U.S.C. § 924(e)(2). When the Defendant was sentenced, in April 2000, a "violent felony" was a crime described in one of three distinct clauses. The "force clause," defined a crime that had "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i) (1998). The enumerated felony clause listed crimes that were "burglary, arson, or extortion, [or] involves use of explosives." 18 U.S.C. § 924(e)(2)(B)(ii) (1998). The residual clause served a catch-all, making a predicate of any

crime that presented "a serious risk of physical injury[,]" 18 U.S.C. § 924(e)(2)(B)(ii) (1998).

The residual clause of subparagraph (ii) was abrogated as unconstitutionally vague in 2015, *Johnson*, 576 U.S. at 595-597. The Supreme Court expressly made *Johnson* retroactive on collateral review. *Welch* v. *United States*, 578 U.S. 120, 134-135 (2016). Thus, under *Johnson*, anyone who was sentenced as an ACC based solely on the residual close was potentially entitled to have his sentence vacated.

In order to be entitled to retroactive relief under *Johnson*, a defendant's ACCA sentence enhancement had to result from application of the residual clause *only*. Petitioners had to prove that "their original ACCA sentences were based solely on the residual clause" and not on the enumerated or force clause. *Dimott* v. *United States*, 881 F.3d 232, 234 (1st Cir. 2018). To prove that their sentences were based solely on the residual clause, defendants had to prove that at the

time of their sentencing, on the record before the District Court at that time, there was no other basis for the ACCA enhancement.

For example, in *Dimott*, 881 F.3d 232, the First Circuit considered convictions for Maine burglary as ACC predicates. The record was silent as to the District Court's original reasoning at sentencing, when it found that the burglary convictions were predicates. But the *Dimott* sentencing court had clearly had sufficient information for it to find that the convictions at issue were for enumerated felonies. *Id.* at 235. That is, it would have been lawful for the sentencing court to have enhanced the defendant's sentence without recourse to the residual clause. The *Dimmott* court therefore concluded that the *Dimott* defendants had originally been sentenced or could have been sentenced under the ACCA's enumerated clause and denied relief under *Johnson*. *Dimott*, 881 F.3d at 237. The First Circuit opined that the petitioners in *Dimott* had failed to make a *Johnson* claim because they

could have lawfully been sentenced under the enumerated clause. "Dimott was deemed eligible for an ACCA sentence based only on burglary convictions, *which qualify under ACCA's enumerated clause." Dimott*, 881 F.3d at 235 (emphasis in original).

In April 2000, when the Defendant was originally sentenced, the inquiry into burglary as an enumerated felony would have been conducted under *Taylor* v. *United States*, 495 U.S. 575, 598 (1990), which defined burglary for this purpose as "generic burglary," that is, a crime consisting of "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor*, 495 U.S. at 598.

After *Taylor* defined burglary, it was immediately clear that Massachusetts B&E did not substantially conform as an enumerated felony under 18 U.S.C. § 924(e)(2)(B) (1998). Massachusetts B&E prohibits entry into vehicles, ships, and vessels as well. M.G.L. c. 266, § 18.

Massachusetts was not the only state to have a non-conforming, potentially overbroad statute, and guidance was immediately forthcoming. The Supreme Court noted that, while most states had statutes on the books that corresponded to generic burglary, some statutes defined the relevant crime "more broadly, *e.g.*, by eliminating the requirement that the entry be unlawful, or by including places, such as automobiles and vending machines, other than buildings." *Taylor*, 495 U.S. at 599. Accordingly, the Supreme Court provided the following guidance for sentencing courts faced with convictions under non-conforming statutes.

A conviction under an overly broad statute, such as the Massachusetts B&E statute, might still a serve as an ACCA predicate under the enumerated-felony clause as a burglary. But it was only a burglary if "the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant."

*Id.* at 602.[3] That is, a conviction for a crime like Massachusetts B&E could be a conviction for a generic burglary, but only if the defendant had been specifically charged with entering a building or structure and had *not* been charged with entering a vehicle, ship, vessel, etc. A charge of entering a "building," could result in a conviction for generic burglary. A charge of entering a vehicle could not. A charge of entering "a vehicle, building, or vessel," likewise could not result in a conviction for generic burglary, because a

---

[3] In later analysis, the inquiry would be referred to as the "categorical approach" to the ACCA, and statutes that listed multiple crimes in a disjunctive list would be denominated "divisible" rather than overbroad. As the Supreme Court explained in 2013, "A prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives" because "'[a]n indictment or a criminal information which charges the person accused, in the disjunctive, with being guilty of one or of another of several offences, would be . . . wholly insufficient.'" *Descamps* v. *United States*, 570 U.S. 254, 262 (2013) (quoting *The Confiscation Cases*, 87 U.S. 92 (1873)). *I.e.*, not every statute containing a disjunctive list of elements is overbroad. Such a statute might list multiple crimes, some of which are enumerated felonies and some of which are not.

conviction for a crime so charged could enter upon proof of entry into a vehicle or ship, which would not be a generic burglary.

To determine whether a particular Massachusetts B&E conviction qualified as a conviction for generic burglary, a federal sentencing court in April 2000 had to conduct an inquiry into the charging documents. A defendant's conviction for Massachusetts B&E could be a lawful ACCA predicate under the enumerated-felony clause only if the charging papers or jury instructions alleged prohibited entry specifically into a *building or structure*. Absent sufficient information from the charging documents, a court could not lawfully find that a defendant previously convicted of Massachusetts B&E had in fact been convicted of a generic burglary.

To be clear, in the immediate aftermath of *Taylor*, as early as 1991, Massachusetts B&E *could* qualify as generic burglary convictions. However, the federal sentencing court would have needed more information than the bare fact

of a conviction to qualify it as such. To
determine whether a prior conviction was a
burglary conviction, the sentencing court had
to determine whether the Defendant had
necessarily been specifically charged with and
convicted of entering a *building or structure*.

In *United States* v. *Wilkinson*, 926 F.2d
22, 29 (1st Cir. 1991)for example, the First
Circuit found that a defendant's Massachusetts
B&E conviction was a conviction for a generic
burglary because the defendant had been
specifically convicted of making unlawful entry
*into a building*. "Wilkinson's 1960 conviction
was for breaking and entering *a building* in the
nighttime with the intent to commit a
felony[.]" 926 F.2d at 29 (emphasis added). But
it did not follow from *Wilkinson* that *every*
Massachusetts B&E conviction in 1960 or
thereafter was for generic burglary. Defendants
convicted of breaking into cars remained
outside the scope of the enhancement, as did
defendants whose charging documents left the
object of illegal entry vague or overly broad.

The inquiry into the specific charging documents had to be conducted for each defendant and each conviction.

In short: in April 2000, when the Defendant was sentenced, the mere fact of a conviction for Massachusetts B&E was insufficient to establish a generic burglary. A sentencing court could not lawfully find that a defendant convicted of Massachusetts B&E had committed a generic burglary unless the sentencing court had information establishing that the illegal entry had been specifically and narrowly charged as a building or structure.

### B. The Defendant's record before the District Court in April 2000 did not reflect convictions for generic burglary as defined in *Taylor*.

In this case, the District Court had before it at sentencing the bare fact of several Massachusetts B&E convictions. It had no information as to whether the charged objects of entry had been buildings, structures, vehicles, ships, or vessels. The

Defendant's original PSR did not provide any
information about the charging documents or
jury instructions. For four out of the five B&E
offenses, the PSR did not indicate whether the
listed offense even involved a building as a
matter of fact, much less as a required
element. (PSR ¶¶ 48, 49, 53, or 54, S. at 14-
20.) There was no evidence that the Defendant
had been specifically charged with and
specifically convicted of entering a building
as opposed to a car or boat.

The original sentencing court could not
have lawfully concluded that the Defendant had
been convicted of any generic burglaries. There
was no factual basis for such a conclusion.  As
a matter of law, the conclusion was foreclosed.

**C. There was no lawful basis on which the
District Court could have concluded, in
April 2000, that any of the Defendant's
convictions satisfied the force clause.**

The Defendant's prior convictions also
failed to satisfy the requirements for a
predicate offense under the ACCA's force
clause.

Massachusetts B&E fails to satisfy the force clause because it does not have as an element the use, attempted use, or threatened use of violent force. See *United States* v. *Fish*, 758 F.3d 1, 7 (1st Cir. 2014).

As described below, Massachusetts ABDW fails to qualify as a predicate offense under the force clause because it may be committed intentionally or recklessly and it is indivisible – that is, reckless ABDW is not a distinct, separate crime from intentional ABDW.

ABDW may be committed either recklessly or intentionally. *See United States* v. *Windley*, 864 F.3d 36, 37 (1st Cir. 2017); *Commonwealth v. Porro*, 458 Mass. 526, 939 N.E.2d 1157, 1162 (2010); *Commonwealth v. Burno*, 396 Mass. 622, 487 N.E.2d 1366, 1368–69 (1986). Reckless ABDW does not satisfy the force clause, *Windley*, 864 F.3d at 39, and thus ABDW is not categorically a violent felony. *See United States* v. *Kennedy*, 881 F.3d 14, 19 (1st Cir. 2018).

By April 2000, Massachusetts ABDW had long been indivisible between its intentional and

reckless forms. *Commonwealth v. Mistretta*, 84 Mass. App. Ct. 906, 995 N.E.2d 814 (2013), quoting *Burno*, 396 Mass. at 625.

In April 2000, contemporary documentation of actual Massachusetts practice was also available. Mr. Capozzi's ABDW conviction entered in the Woburn District Court on May 16, 1997. (PSR ¶ 57, S. at 21) The model district court jury instruction that would have been in use at that time did not provide for a special verdict slip or unanimity instruction upon request where the evidence would warrant conviction on both the intentional and reckless forms of ABDW.[4]

The Defendant's ABPO conviction was likewise not a predicate offense under the force clause. In *Windley*, 864 F.3d 36, the First Circuit held that the reckless form cannot satisfy the force clause. 864 F.3d at 39. And in *United States* v. *Faust*, 853 F.3d 39,

---

[4] The instruction (5.401) is from the Model Jury Instructions for use in the District Court, 1988 Edition (with 1989 Supplement), along with the A&B instruction (5.40). (R. at 112-131.)

60 (1st Cir. 2017), the First Circuit held that even intentional ABPO "categorically cannot count as a violent felony under the ACCA" without recourse to the residual clause.

### D. The District Court erred when it concluded that it could have lawfully sentenced the Defendant under the ACCA in April 2000 without relying on the residual clause.

In denying relief in this matter, the District Court concluded that it had not needed to rely on the residual clause to enhance the Defendant's sentence under the ACCA at his original sentencing. For this conclusion, the District Court relies almost completely on *Wilkinson*, 926 F.2d 22 In its order denying relief, the District Court asserts that *Wilkinson* stands for the proposition that a Massachusetts B&E conviction, in April 2000, without more, was enough to establish that a defendant had been convicted of generic burglary. (Add. at 18.) This assertion fatally misreads *Wilkinson*.

The *Wilkinson* court observed that Mr. Wilkinson had been convicted of "breaking and

entering of a *building*" (emphasis added). This
was a specific factual finding about Mr.
Wilkinson's criminal history. The *Wilkinson*
court found that Mr. Wilkisnon had in fact been
convicted of breaking into a building. The
*Wilkinson* Court did not find that *all*
defendants convicted under the same statute had
necessarily been convicted of entering
buildings as well! The *Wilkinson* Court made a
case-specific factual finding about the 1960
conviction of a particular defendant. The Court
then drew a (correct) legal conclusion about
how that particular 1960 conviction of that
particular defendant qualified as an ACCA
predicate.

It is certainly true that some defendants,
such as Mr. Wilkinson, could have been charged
and convicted under the Massachusetts B&E
statute with having unlawfully entered
buildings. And for those that were so charged
and so convicted, their B&E convictions would
qualify as ACCA predicates under the
enumerated-felony clause. But this has no

bearing on whether Mr. Capozzi was so charged or so convicted, or whether the sentencing court could have made such a determination in this case.

It was error for the District Court to conclude that, based on the record before it at sentencing in April 2000, it could have lawfully found Mr. Capozzi's B&E convictions to be generic burglaries. There simply was not enough information for such a finding to be lawful. Unlike the *Wilkinson* court, the District Court in this case had no basis for concluding that Mr. Capozzi had in fact been charged of convicted with entering buildings of structures.

Reliance on *Wilkinson* to support such a finding was misplaced. According to the *Wilkinson* opinion, the sentencing court in *Wilkinson* had enough information to conclude that Mr. Wilkinson had in fact been previously convicted entering a building. It does not follow from Mr. Wilkinson's conviction that Mr. Capozzi was also convicted of entering any

buildings. The District Court erred by extrapolating that, because Mr. Wilkinson was convicted for entering a building in 1960, Mr. Capozzi was necessarily convicted of entering a building in 1991. There is no basis in law or logic for such a conclusion.

**E. The District Court necessarily based its sentencing enhancements on the residual clause of the ACCA, and the Defendant was therefore entitled to relief under *Johnson*.**

Because the original sentencing court lacked any basis for concluding that the Defendant's prior convictions were generic burglaries or that they satisfied the force clause, the Defendant could not lawfully have been sentenced as an ACCA except by reliance on the residual clause. The Defendant is therefore entitled to relief under *Johnson*, and the District Court's failure to grant that relief was error.

**III. The District Court abused its discretion by declining to conduct a plenary re-sentencing.**

It is not contested that the District Court had the discretion to re-sentence the

Defendant on Counts 1s and 3s after it had vacated Count 4s. This is because the sentences on the three counts had an interdependent relationship. "[W]here the Guidelines contemplate an interdependent relationship between the sentence for the vacated conviction and the sentence for the remaining convictions- a sentencing package - a district court may, on a petition under 28 U.S.C. § 2255, resentence on the remaining convictions." *United States* v. *Rodriguez*, 112 F.3d 26, 30–31 (1st Cir. 1997).

The test for the district court's discretion to conduct a plenary resentencing is whether the sentences on the counts are independent or intertwined. Sentences are intertwined if the conviction on one count affects the sentence on another.

In this case, the Guidelines specify a weapons enhancement that applies only in the *absence* of a conviction under 18 U.S.C. § 924(c). "If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific

offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense." U.S.S.G § 2k2.4 cmt 4 (weapon enhancement). The § 924(c) enhancement is therefore intertwined with the sentence on any count subject to the weapons enhancement. "That the firearms [Section 924(c)] sentence had to be calculated independently does not mean that the sentence on the [other] counts did not depend on the existence of that [firearms] sentence. To the contrary, the Guidelines specify such a relationship." *Rodriguez*, 112 F.3d at 30–31. Because the weapons enhancement applies only in the *absence* of a 924(c) conviction, the 924(c) enhancement is intertwined with the sentence on any count potentially subject to the Guidelines weapons enhancement.

The District Court has discretion to perform a plenary resentencing where the sentences are intertwined in this way. There is "no legitimate expectation of finality in any

discrete part of an interdependent sentence after a partially successful appeal or collateral attack[.]" *United States* v. *Brown*, 26 F.4th 48, 61 (1st Cir. 2022), *cert. denied,* U.S., No. 22-5127 (Oct. 3, 2022) (quoting *Pasquarille* v. *United States*, 130 F.3d 1220, 1224 (6th Cir. 1997)).

In this case, where the District Court had erred in denying the Defendant's motion to vacate his sentence on Counts 1s and 3s, the District Court erred further when it declined to exercise its discretion to conduct a plenary resentencing to correct that error. The District Court had the authority to perform a plenary resentencing. The government had already agreed that "under current jurisprudence, the Defendant would not be an ACC" at a resentencing in 2022. (R. at 192.) A plenary resentencing under existing jurisprudence in 2022 would have corrected the error.

The failure to undertake the simple correction was an abuse of discretion because it left an easily remediable error uncorrected.

## CONCLUSION

For the reasons stated above, the Defendant requests that this Court vacate the amended judgment and remand the case to the District Court for resentencing.

Respectfully Submitted

DEREK CAPOZZI

*/s/ Dana Goldblatt*
Dana Goldblatt
First Circuit No. 1170639
BBO No. 601022

Law Office of Dana Goldblatt
150 Main St., Ste 28
Northampton, MA 01060
TEL: (413) 570-4136
FAX: (413) 301-9761
EMAIL: dana@danagoldblattlaw.com

NO. 22-1243

**UNITED STATES COURT OF APPEALS FOR THE
FIRST CIRCUIT**


DEREK CAPOZZI,
*Appellant*,

v.

UNITED STATES,
*Appellee*.


On Appeal from the United States District Court
for the District of Massachusetts


**ADDENUDM**


Dana Goldblatt
First Circuit No. 1170639
B.B.O. No. 601022

The Law Office of Dana Goldblatt
150 Main Street, Ste. 28
Northampton, MA 01060
(413)570-4136
dana@danagoldblattlaw.com

October 17, 2022

## TABLE OF CONTENTS

Document                                             Page

ECF 428: Memorandum and Order............. 3

ECF 465: Amended Judgment................. 20

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| DEREK CAPOZZI, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Criminal Action |
| | ) No. 98-10087-PBS |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

_____

### MEMORANDUM AND ORDER

March 31, 2021

Saris, D.J.

### INTRODUCTION

Petitioner Derek Capozzi moves under 28 U.S.C. § 2255 to challenge (1) his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), (2) his conviction for use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c), and (3) his sentence enhancement pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1).

After a review of the record, the Court **ALLOWS** in part and **DENIES** in part the motion (Dkts. 403 and 416).

Add. 3

**BACKGROUND**

### I.   Criminal Proceedings

On July 8, 1996, Petitioner was charged in an indictment with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) (Count 1s), attempted extortion affecting interstate commerce in violation of 18 U.S.C. § 1951(a) (Count 3s), two counts of use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (Counts 4s and 6s), and armed bank robbery, in violation of 18 U.S.C. § 2113(d) (Count 5s). Counts 1s, 3s, and 4s proceeded to trial, while Counts 5s and 6s were severed. On November 16, 1999, the jury convicted Petitioner of Counts 1s, 3s, and 5s.

According to the presentence report ("PSR"), he had seven ACCA violent felony predicate convictions and was an Armed Career Criminal ("ACC").[1] Defendant did not file any objections to this ACC classification or to the factual description of the predicates. Moreover, there was no challenge to the ACC classification during the sentencing hearing. On April 6, 2000, the Court sentenced Petitioner to 360 months in prison.[2]

---

[1] Those convictions include breaking and entering in the daytime in violation of M.G.L. c. 266, § 18 (five convictions); entering without breaking in violation of M.G.L. c. 266, § 17; assault and battery with a dangerous weapon in violation of M.G.L. c. 265, § 15; and assault and battery on a police officer in violation of M.G.L. c. 265, § 13D.

[2] Petitioner's Guidelines Sentencing Range was 235 to 293 months. The Court sentenced Petitioner to 300 months as to Count 1s, 240

2

## II.  **Direct Appeal**

Petitioner appealed his conviction to the United States
Court of Appeals for the First Circuit, which affirmed on
October 6, 2003. United States v. Capozzi, 347 F.3d 327, 328
(1st Cir. 2003), cert. denied, Capozzi v. United States, 540
U.S. 1168 (2004).

## III. **First § 2255 Habeas Petition**

On January 25, 2005, Petitioner filed his first motion
under 28 U.S.C. § 2255 challenging his conviction on the basis
of ineffective assistance of counsel. Mot. to Vacate, Set Aside
or Correct Sent., Capozzi v. United States, 2007 WL 162247 (D.
Mass. Jan. 12, 2007) (No. 05-10171), Dkt. 1. Petitioner amended
the motion on March 25, 2005, to add a claim under Shepard v.
United States, 544 U.S. 12 (2005), asserting that his previous
convictions did not constitute sufficient ACCA violent felony
predicates to qualify him as an ACC because they were non-
generic burglaries, that the Court violated his Sixth Amendment
right to a jury trial when it determined under a preponderance
standard that his prior convictions qualified him as an ACC, and
that his counsel provided ineffective assistance by failing to
raise those arguments. This Court denied that motion on January

---

months as to Count 3s to run concurrently with Count 1s, and 60
months as to Count 4s to run consecutively as required for the
§ 924(c) conviction.

3

12, 2007. Among other things, the Court pointed out that the PSR explicitly found that four of the Petitioner's prior convictions involved buildings and qualified him as an armed career criminal under 18 U.S.C. § 924(e). The Court also rejected as untimely the proposed amendment to his habeas petition asserting that his "prior convictions for allegedly non-generic burglary were impermissible ACCA predicates" on the ground that the amendment contained new details in his prior record that were never raised in the original habeas motion. The Court denied the certificate of appealability, which was filed only with respect to his Sixth Amendment claim under Almendarez Torres v. United States, 523 U.S. 224 (1998). The First Circuit affirmed the denial of the request for a certificate of appealability, stating:

> Petitioner's challenge to the continued validity of Almendarez-Torres v. United States, 523 U.S. 224 (1998), the only claim actually addressed in petitioner's COA application before the district court, does not present a debatable claim. See United States v. Burghardt, 939 F.3d 397, 409 (1st Cir. 2019). Petitioner concedes that the district court correctly concluded that his remaining challenges to his sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), are time-barred, so no COA will issue on those claims. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). Even absent this concession, we would find no grounds for granting a COA because petitioner failed to include the remaining ACCA claims in his request for a COA in the district court. See Peralta v. United States, 597 F.3d 74, 84 (1st Cir. 2010) (claim not included in request for COA in district court is waived).

Capozzi v. United States, Appeal No. 16-1562 (1st. Cir. 2019) (Document 00117525117).

Add. 6

IV.   <u>Second or Successive § 2255 Habeas Motion</u>

On November 27, 2015, Petitioner filed a <u>pro se</u> motion for authorization to file a second or successive § 2255 motion challenging his sentence enhancement pursuant to 18 U.S.C. § 924(e)(1) based on <u>Johnson v. United States</u>, 576 U.S. 591 (2015) ("<u>Johnson II</u>"). After counsel was appointed, Petitioner amended his motion to include challenging his conviction for use of a firearm during attempted extortion in violation of 18 U.S.C. § 924(c) on <u>Johnson II</u> grounds.

On December 11, 2019, the First Circuit granted Petitioner's request for a second or successive § 2255 motion. Based on <u>Johnson II</u> and <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019), the First Circuit concluded that "Capozzi has made a prima facie showing that his challenge to his conviction under 18 U.S.C. § 924(c) legitimately relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Dkt. 387 at 1 (internal citations omitted). The First Circuit added: "To the extent his application includes additional claims, the court expresses no opinion whatsoever as to whether those claims satisfy either of the gatekeeping provisions set out at 28 U.S.C. § 2255(h), a finding that must be made by the district court in the first instance." <u>Id.</u> The First Circuit did not address the claim under § 924(e)(1). <u>Id.</u> However, it deemed

5

Add. 7

Petitioner's second or successive § 2255 motion filed on
November 27, 2015.

On June 22, 2020, after the § 2255 motion was transferred
back before this Court, Petitioner filed a supplement to his
second or successive § 2255 motion, challenging his conviction
for being a felon in possession of a firearm in violation of 18
U.S.C. § 922(g) based on Rehaif v. United States, 139 S. Ct.
2191 (2019). He did not file a motion to amend pursuant to Fed.
R. Civ. P. 15(a)(2). Petitioner also did not present his Rehaif
claim to the First Circuit. The motion as supplemented is now
before the Court.

**DISCUSSION**

I.   **Standard of Review**

A federal criminal defendant "may petition for post-
conviction relief under 28 U.S.C. § 2255(a) if, inter alia, the
individual's sentence 'was imposed in violation of the
Constitution or laws of the United States' or 'is otherwise
subject to collateral attack.'" Lassend v. United States, 898
F.3d 115, 122 (1st Cir. 2018) (quoting 28 U.S.C. § 2255(a)). The
petitioner bears the burden of establishing his entitlement to
relief. Id.

## II.   Conviction Under 18 U.S.C. § 924(c)[3]

Petitioner argues that his conviction for use of a firearm during a crime of violence in violation of § 924(c) must be vacated because his predicate conviction for attempted Hobbs Act extortion in violation of 18 U.S.C. § 1951(a) does not qualify as a "crime of violence" under 18 U.S.C. § 924(c)(3)(B).

Section 924(c) sets out mandatory sentence enhancements applicable to:

> any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm.

Id. § 924(c)(1)(A). The statute defines a "crime of violence" as:

> an offense that is a felony and--
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Id. § 924(c)(3). In United States v. Davis, the Supreme Court held that the statute's residual clause, § 924(c)(3)(B), is unconstitutionally vague. 139 S. Ct. 2319, 2336 (2019).

---

[3] The government does not dispute that the Court has jurisdiction over Petitioner's challenge to his conviction under 18 U.S.C. § 924(c).

Add. 9

Petitioner argues that a conviction for attempted Hobbs Act extortion does not qualify under the "force" clause in § 924(c)(3)(A) because it can be committed using threats to economic interests. The Government responds that Petitioner's conviction for attempted Hobbs Act extortion satisfies the "force" clause because the statute defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Petitioner was charged with "the attempted obtaining of money, in the amount of $4,000.00, more or less, from a person, with his consent, induced by wrongful use of actual and threatened force, violence and fear." Dkt. 387-1 at 99. The Court instructed the jury: "What does extortion mean? Extortion means the obtaining of property from another with his consent, induced by wrongful use of actual or threatened force, violence or fear." Dkt. 287 at 109:10-13.

The First Circuit has held that a Hobbs Act prosecution can be based on a "fear" of economic loss. See United States v. Cruzado-Laureano, 404 F.3d 470, 481 (1st Cir. 2005) (stating that "[e]xtortion by 'fear' can mean fear of economic loss"); United States v. Sturm, 870 F.2d 769, 772 (1st Cir. 1989) (holding that attempted Hobbs Act extortion "may be based on a creditor's fear of nonrepayment".) See also First Cir. Pattern

8

Add. 10

Jury Instr. § 4.18.1951, Interference with Commerce by Robbery or Extortion (Hobbs Act), cmt. 2 ("The 'fear' element of extortion can include fear of economic loss. . .. If the extortion is economic fear, the term 'wrongful' must be defined to require that the government prove that the defendant did not have a claim of right to the property, and that the defendant knew that he or she was not legally entitled to the property obtained.") (citations omitted). Other circuits agree. See United States v. Villalobos, 748 F.3d 953, 955, 956–57 (9th Cir. 2014) (finding Hobbs Act extortion where defendant threatened to mislead authorities investigating an offense); Levitt v. Yelp! Inc., 765 F.3d 1123, 1130–33 (9th Cir. 2014) (finding wrongful threats of economic injury would prove Hobbs Act extortion); United States v. Iozzi, 420 F.2d 512, 515 (4th Cir. 1970) (acknowledging that fear of economic loss is sufficient to support a conviction for Hobbs Act extortion).

The question is whether the "fear" element of extortion constitutes "physical force" as used in § 924(c)(3)(A). The Supreme Court has held that "physical force" requires "violent force," which means "strong physical force" or "force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140 (2010) (cleaned up). The actual facts supporting the conviction do not matter because the Court must follow the so-called "categorical approach." Mathis v.

United States, 136 S. Ct. 2243, 2251 (2016) (under the
categorical analysis, how a defendant "actually perpetrated the
crime . . . makes no difference"). Applying the "categorical
approach," the Court must determine whether the statutory
elements of the offense "necessarily require the use, attempted
use, or the threatened use of physical force" under the force
clause in § 924(c). United States v. Simms, 914 F.3d 229, 233
(4th Cir. 2019). Under the caselaw, the Court concludes that
Hobbs Act extortion can be committed without "the use, attempted
use or threatened use of physical force" because it can be
committed by fear of economic harm. See In re Hernandez, 857
F.3d 1162, 1166-67 (11th Cir. 2017) (Martin, J., concurring)
("[A]ttempted Hobbs Act extortion is even less likely [than
completed Hobbs Act extortion] to qualify as a 'crime of
violence' in light of Johnson." (emphasis in original)).

A number of recent district court decisions have held that
Hobbs act extortion does not qualify as a crime of violence
under § 924(c)'s force clause because of the "fear" element. See
United States v. White, No. MO:11-CR-0027612, 2020 WL 8024725,
at *3-4 (W.D. Tex. Dec. 29, 2020) ("The word fear brings
nonviolent blackmail and economic extortion within the scope of
the Hobbs Act. . . . After Davis, Hobbs Act extortion can
qualify as a crime of violence only under the now
unconstitutionally vague residual clause.") (cleaned up); Brown

10

v. United States, No. 3:05-CR-376-RJC-3, 2020 WL 437921, at *2
(W.D.N.C. Jan. 28, 2020) ("The offense underlying Petitioner's
§ 924(c) convictions was Hobbs Act extortion which the
Government correctly concedes is not a crime of violence under
§ 924(c)'s force clause.") (citations omitted); Burleson v.
United States, No. 3:20-CV-487, 2020 WL 7027503, at *4 (M.D.
Tenn. Nov. 27, 2020) (pointing to the government's concession
that attempted Hobbs Act extortion cannot satisfy the force
clause). The Government relies on United States v. Nikolla for
the proposition that Hobbs Act extortion is categorically a
"crime of violence." 950 F.3d 51, 52 (2d Cir.), cert. denied,
141 S. Ct. 634 (2020). That case is easily distinguished because
the Second Circuit's holding is limited to "the offense
specified in the clause of 18 U.S.C. § 1951(a) by the language
'[w]hoever . . . commits or threatens physical violence to any
person or property in furtherance of a plan or purpose to do
anything in violation of [§ 1951]." Nikolla, 950 F.3d at 54; see
Scheidler v. Nat'l Org. for Women, 547 U.S. 9, 22 (2006)
(acknowledging that acts or threats of physical violence in
furtherance of Hobbs Act robbery or extortion constitute a
"separate Hobbs Act crime").

Because attempted Hobbs Act extortion does not qualify as a
"crime of violence," Petitioner's § 924(c) conviction must be
vacated.

### III. Conviction Under 18 U.S.C. § 922(g) (<u>Rehaif</u> Claim)

The Government argues that this Court has no jurisdiction over
the Petitioner's <u>Rehaif</u> claim because he did not include it in
his motion before the First Circuit. I agree. Petitioner
supplemented his motion after the First Circuit issued the order
allowing the second or successive petition. Because the claim
does not satisfy the gatekeeping requirements, the Court
dismisses the claim without prejudice on the ground this Court
lacks jurisdiction. <u>See</u> <u>Evans-Garcia v. United States</u>, 744 F.3d
235, 237 (1st Cir. 2014); 28 U.S.C. § 2255(h) ("A second or
successive motion must be certified as provided in section 2244
by a panel of the appropriate court of appeals[.]"); 28 U.S.C.
§ 2244(b)(2) ("A claim presented in a second or successive
habeas corpus application under section 2254 that was not
presented in a prior application shall be dismissed unless . . .
the applicant shows that the claim relies on a new rule of
constitutional law, made retroactive to cases on collateral
review by the Supreme Court, that was previously
unavailable[.]"); 28 U.S.C. § 2244(b)(4) ("A district court
shall dismiss any claim presented in a second or successive
application that the court of appeals has authorized to be filed
unless the applicant shows that the claim satisfies the
requirements of this section.").

### IV.   <u>Sentence Enhancement Under 18 U.S.C. § 924(e)(1)</u>

Petitioner argues that his ACCA enhanced sentence must be
vacated because he lacks the necessary three predicate
convictions to qualify as an ACC under 18 U.S.C. § 924(e)(1).
Specifically, Petitioner states that Massachusetts breaking and
entering does not qualify as a "violent felony" after the
Supreme Court invalidated the residual clause in
§ 924(e)(2)(B)(ii) because "[t]here was no discussion of the
bases upon which the ACCA predicates were considered violent
felonies" during sentencing, Dkt. 403 at 3, and the offense
satisfies neither the force clause, § 924(e)(2)(B)(i), nor the
enumerated clause, the portion of § 924(e)(2)(B)(ii) that
defines a "violent felony" as "burglary, arson, or extortion."

The ACCA sets out mandatory sentence enhancements
applicable to:

> a person who violates section 922(g) of this title and
> has three previous convictions by any court referred to
> in section 922(g)(1) of this title for a violent felony
> . . . committed on occasions different from one another.

18 U.S.C. § 924(e)(1). The statute defines a "violent felony"
as:

> any crime punishable by imprisonment for a term
> exceeding one year . . . that--
>
> (i) has as an element the use, attempted use, or
> threatened use of physical force against the person of
> another; or

13

> (ii) is burglary, arson, or extortion, involves use of
> explosives, or otherwise involves conduct that presents
> a serious potential risk of physical injury to another.

Id. § 924(e)(2)(B). In Johnson II, the Supreme Court considered

the ACCA's residual clause, the portion of § 924(c)(2)(b)(ii)

that defines a "violent felony" as any felony that "involves

conduct that presents a serious potential risk of physical

injury to another." 576 U.S. at 593. The Court held that the

residual clause is unconstitutionally vague. Id. at 606.

    As a threshold matter, the Court must determine whether it

has jurisdiction to hear this claim since the First Circuit did

not directly address the issue. The Government argues that

Petitioner's challenge to his ACCA sentence enhancement pursuant

to 18 U.S.C. § 924(e)(1) is really an untimely claim under

Mathis, 136 S. Ct. at 2247-48, not a timely claim under Johnson

II. In Mathis, the Supreme Court held that a "prior crime

qualifies as an ACCA predicate if, but only if, its elements are

the same as, or narrower than, those of the generic offense."

Id.

    Petitioner's claim that his Massachusetts breaking and

entering convictions are not violent felony predicates after

Johnson II invalidated the residual clause relies, in the

Government's view, on the argument that those convictions also

do not fall under the enumerated clause because their elements

are broader than generic burglary -- a Mathis claim. The

Government relies heavily on United States v. Dimott, 881 F.3d 232, 234 (1st Cir. 2018), which held that a challenge to the designation of Maine burglary convictions as ACCA violent felony predicates based on Johnson II was really an untimely Mathis claim. The First Circuit added, "[T]o successfully advance a Johnson II claim on collateral review, a habeas petitioner bears the burden of establishing that it is more likely than not that he was sentenced solely pursuant to ACCA's residual clause." Id. at 243. Because Mathis is not a new rule of constitutional law that was previously unavailable and has been made retroactive to claims on collateral review by the Supreme Court, the Government argues that Petitioner's claim does not meet the gatekeeping requirements for a second or successive § 2255 motion. See 28 U.S.C. § 2244(b)(2), 2244(b)(4).

Petitioner responds that "the sentencing court did not have sufficient information to find that the Defendant had committed three generic burglaries" because "[t]he PSR does not indicate whether the B&Es identified in paragraphs 48, 49, 53, or 54 involved buildings or structures" and "does not indicate whether the 'entry' described in PSR ¶ 50 was in fact 'unlawful or unprivileged.'" Dkt. 427 at 13-14; see Taylor v. United States, 495 U.S. 575, 598 (1990) (defining generic burglary as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime"). Thus, in

15

Add. 17

Petitioner's view, the Court must have relied on the residual clause at sentencing and Johnson II applies.

The Government correctly states that the Court does not have jurisdiction because Petitioner's challenge is an untimely Mathis claim. See 28 U.S.C. § 2244(b)(2), 2244(b)(4). As it points out, the Court already rejected this claim in the initial habeas motion, and in denying the certificate of appealability, the First Circuit stated, "Petitioner concedes that the district court correctly concluded that his remaining challenges to his sentence under the [ACCA] are time-barred. . . . Even absent this concession, we would find no grounds for granting a COA because petitioner failed to include the remaining ACCA claims in his request for a COA in the district court." Capozzi v. United States, Appeal No. 16-1562 (1st. Cir. 2019) (Document 00117525117). Moreover, there is no basis in the record for concluding that the Court sentenced Petitioner solely under the residual clause. In United States v. Wilkinson, the First Circuit held that breaking and entering of a building in the nighttime with the intent to commit a felony in violation of M.G.L. c. 266, § 16 fell within either the enumerated or residual prong of 18 U.S.C. § 924(e)(1) "or both" at the time of Petitioner's sentencing. 926 F.2d 22, 29 (1st Cir. 1991), overruled on other grounds, United States v. Vazquez, 724 F.3d 15 (1st Cir. 2013). It also relied on the Supreme Court holding

16

Add. 18

that "burglary" includes "an unlawful . . . entry into . . . a building with intent to commit a crime." <u>Taylor v. United States</u>, 495 U.S. 575 (1990).

Because the Court likely sentenced under both clauses, the attempt to characterize this as a <u>Johnson</u> claim fails.

<u>**ORDER**</u>

For the reasons stated above, Petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Dkts. 403 and 416) is **ALLOWED** in part as to his § 924(c) conviction and **<u>DENIED</u>** in part as to his § 922(g) conviction and his sentence enhancement pursuant to § 924(e)(1).

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge

Add. 19

AO 245C (Rev. 02/18)   Amended Judgment in a Criminal Case    (NOTE: Identify Changes with Asterisks (*))
Sheet 1

# UNITED STATES DISTRICT COURT

## District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA | **AMENDED JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| Derek  Capozzi | Case Number: **1:  98  CR  10087   - 001 -  PBS** |
| | USM Number:  22016-038 |

Date of Original Judgment:   4/13/2000
(Or Date of Last Amended Judgment)

Dana  L. Goldblatt
Defendant's Attorney

**Reason for Amendment:**

☐ Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))
☐ Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))
☐ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a))
☐ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)

(Amended to vacate Count 4s and correct the sentence as to the remaining counts)

☐ Modification of Supervision Conditions (18 U.S.C. §§ 3563(c) or 3583(e))
☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))
☐ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))
☑ Direct Motion to District Court Pursuant ☒ 28 U.S.C. § 2255 or
   ☐ 18 U.S.C. § 3559(c)(7)
☐ Modification of Restitution Order (18 U.S.C. § 3664)

**THE DEFENDANT:**

☐ pleaded guilty to count(s) _____
☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.
☒ was found guilty on count(s)   1s  &  3s
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC § 922(g)(1) | Felon in Possession of a Firearm | 02/18/98 | 1s |
| 18 USC § 1951 | Attempted Extortion Affecting Commerce | 02/18/98 | 3s |

The defendant is sentenced as provided in pages 2 through ____7____ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☑ The defendant has been found not guilty on count(s)   5s & 6s
☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

3/24/2022
Date of Imposition of Judgment

/s/ Patti B. Saris

Signature of Judge   The Honorable Patti B. Saris
Judge, U.S. District Court
Name and Title of Judge

3/29/2022
Date

Add. 20

Judgment — Page    2    of    7

DEFENDANT:    Derek Capozzi
CASE NUMBER: **1: 98 CR 10087 - 001 - PBS**

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of :

300 Months as to Count 1s
240 Months as to Counts 3s to run concurrently with Count 1s

☑    The court makes the following recommendations to the Bureau of Prisons:

A Judicial recommendation to a FCI with psychiatric treatment.

☑    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

     ☐   at   _____   ☐ a.m.   ☐ p.m.   on   _____ .

     ☐   as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

     ☐   before 2 p.m. on   _____ .

     ☐   as notified by the United States Marshal.

     ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

Add. 21

DEFENDANT:  Derek  Capozzi
CASE NUMBER: **1: 98  CR  10087  - 001 - PBS**

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

60 MONTHS

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    - ☐  The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.  ☑  You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
5.  ☐  You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
6.  ☐  You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

Add. 22

|  |  | Judgment—Page | 4 | of | 7 |

DEFENDANT:   Derek  Capozzi
CASE NUMBER: **1: 98  CR  10087   - 001 - PBS**

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision.  These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.   You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.   After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.   You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.   You must answer truthfully the questions asked by your probation officer.
5.   You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.   You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.   You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.   You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.   If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10.  You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11.  You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12.  If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.
13.  You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature  _____       Date  _____

Add. 23

Judgment—Page   5   of   7

DEFENDANT:   Derek  Capozzi
CASE NUMBER:   **1: 98  CR  10087   - 001 - PBS**

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant is to participate in drug testing and treatment, in-patient if necessary, at the direction of the US Probation Office.

2. The defendant shall procure employment.

3. The defendant is to participate in mental health counseling.

4. The defendant, and any of his agents, (except counsel or a private investigator acting for counsel, shall not have contact nor cause any contact with any of the government witnesses or victims, or their families, in the Haverhill, Peabody or Beverly incidents.  This order is effective immediately.

5. The defendant shall not mail any threatening communications or engage in any witness intimidation. This order is effective immediately.

DEFENDANT:    Derek Capozzi
CASE NUMBER:    1: 98 CR 10087  - 001 - PBS

# CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $ 200.00 | $ | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **TOTALS** | $          0.00 | $          0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☐ the interest requirement is waived for    ☐ fine    ☐ restitution.

☐ the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245C (Rev. 02/18)   Amended Judgment in a Criminal Case
Sheet 6 — Schedule of Payments
(NOTE: Identify Changes with Asterisks (*))

Case 1:98-cr-10087-PBS   Document 465   Filed 03/29/22   Page 7 of 7

Judgment — Page ___7___ of ___7___

DEFENDANT:   Derek Capozzi
CASE NUMBER: **1: 98  CR  10087   - 001 - PBS**

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

**A**   ☑   Lump sum payment of $ __200.00__          due immediately, balance due

     ☐  not later than _____ , or
     ☐  in accordance with   ☐  C,   ☐  D,   ☐  E, or   ☐  F below; or

**B**   ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

**C**   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of  $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of  $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**   ☐   Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**   ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

Add. 26

# Certificate of Compliance With Type-Volume Limit

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

    1. This document complies with the word limit of Fed. R. App. P. [insert Rule citation] because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

☑ this document contains   5509   words, **or**

☐ this brief uses a monospaced typeface and contains        lines of text.

    2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☐ this document has been prepared in a proportionally spaced typeface using _____ in _____, **or**

☐ this document has been prepared in a monospaced typeface using _____ with _____.

(s) /s/ Dana Goldblatt _____

Attorney for  Derek Capozzi _____

Dated:  10/17/2022 _____

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2022, I, Dana Goldblatt, electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

**AUSA Mark Grady.**

/s/ Dana Goldblatt